## CHARLES H. TUGMAN, RESPONDENT, *v.* THE NATIONAL STEAMSHIP COMPANY, APPELLANT.

*Contract for carrying goods — when not confined to goods shipped on shipper's own account — Removal of action to Federal court.*

The plaintiff, a resident of Chicago, entered into a contract with the defendant whereby the latter agreed to carry and transport from New York to Liverpool such merchandise, not exceeding a specified amount, as might be furnished by the plaintiff, during certain months, at a specified price. A portion of this merchandise was shipped by the plaintiff on his own account, and the remainder thereof was furnished by other persons, who made a contract with the plaintiff for its transportation  The bills of lading were made out at Chicago, the defendant receiving the goods at New York, paying the back freight and collecting the whole amount of freight from the assignees at Liverpool. After the making of the contract between plaintiff and defendant ocean freights

increased, so that, as the bills of lading made at Chicago charged for freights at the current rates, those being the rates agreed upon between plaintiff and the parties furnishing the merchandise to him for transportation, the amount received by the defendant at Liverpool for the ocean freights exceeded the amount which, by the terms of his contract, was to be charged to the plaintiff. In an action by the plaintiff to recover this excess, over the contract rates, which had been received by the defendant, *held,* that he was entitled to recover.

To authorize the removal of an action from a State court to a Federal court it is not sufficient that it is alleged that the defendant was an alien, a citizen or subject of a foreign State or country at the time the petition for such removal was prepared, but it must appear that such was the fact at the time of the commencement of the action.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The referee found that on or about the 8th day of October, 1874, the plaintiff and the defendant and a certain corporation, known as the Erie and Pacific Dispatch Line engaged in transporting property from Chicago to New York for hire by their duly authorized agents, entered into a contract whereby it was agreed that the plaintiff should ship, or cause to be shipped, on the transportation lines of said parties 1,000 tons of merchandise from the port of Chicago, in the State of Illinois, to the port of Liverpool, in England, during the month of December, 1874, and the month of January, 1875, at such times and in such quantities as the said plaintiff might elect, and that the same should be carried and delivered from said port of Chicago to said port of Liverpool, the said defendant to receive as its proportion of the said freight of said merchandise from the said port of New York to the said port of Liverpool at the rate of thirty-one cents, gold, per 100 pounds, to be shipped under said contract.

That, in pursuance of said contract, the said plaintiff during the month of December, 1874, and the month of January, 1875, shipped and caused to be shipped from the said port of Chicago to the said port of Liverpool 2,003,305 pounds of merchandise by bills of lading, by which the consignees of the merchandise so shipped were to pay, on the delivery of the said merchandise at Liverpool aforesaid for the account of such shipper, at the rate of eighty-seven cents in American gold coin for and on account of the through carriage from Chicago to Liverpool for each 100 pounds.

That the said merchandise was carried by the defendants under said contracts and delivered to the consignees in Liverpool, England.

That when the several parcels of merchandise so shipped as aforesaid arrived from Chicago at the port of New York the said defendants received the same and transported said merchandise to Liverpool, and collected and received from the consignees of said merchandise, on the delivery of the same, the freight money due on said bills of lading for freight from Chicago to Liverpool, amounting in the whole to the sum of $16,728 in American gold coin, convertible into currency or legal tender notes at the rate of $110 for each $100 in gold coin, as provided for in said bills of lading.

That the through freight which the said carriers were entitled under said contract to have and retain for the carriage and delivery of said merchandise, calculated at the rate of sixty-seven and a-half cents per 100 pounds, amounted to the sum of $13,522.17 in American gold coin, as aforesaid, and no more, and the defendants have refused to pay over to the plaintiff the remainder and balance of the said money so collected and retained by said defendants, this being the sum of $3,366.40 in American gold coin or $3,703.04 in currency as aforesaid.

And, upon the foregoing facts, found as conclusions of law:

First. That under the contract aforesaid the defendants were only entitled to retain and have for the freight and carriage of the merchandise shipped under said contract, at the rate of sixty-seven and a-half cents per 100 pounds of the said merchandise.

Second. That the said amount of $3,366.40 received by the defendants was so received for and on account of, and to and for the use of the said plaintiff, and that he was entitled to recover the same from the said defendants, or its equivalent, in legal tender notes, as aforesaid, being the sum of $3,703.04, with interest from the 20th day of February, 1875, and that the said principal and interest to the date of the report, amounted to the sum of $4,324.53 in currency, for which he directed judgment.

*John Chetwood,* for the appellant.

*S. S. Rowland* and *F. J. Fithian,* for the respondent.

GILBERT, J. :

Satisfactory proof was given of the actual making of the contract with the plaintiff. We are of opinion that the surrounding circumstances and the defendant's course of business, preclude the limitation which the defendant now seeks to put upon the contract, namely, that the defendant should carry goods only, of which the plaintiff should be the actual shipper. Nothing of that kind was said when the contract was made, and such a limitation would be inconsistent with the nature of the transaction. I should infer, from the evidence, that when contracts like that in this case are made, the engagements of the carriers created thereby, are dealt with as commodities, and are bought and sold for speculation on the exchanges, in the same manner as engagements for the future delivery of merchandise or stocks. The engagement of the defendant in this case was sold by the plaintiff in parcels to the several shippers of the merchandise. He testified to that fact explicitly, and the evidence was not contradicted. It appears also that the merchandise shipped was delivered to the Erie and Pacific Dispatch Company in Chicago, with orders from the plaintiff that the same should be delivered to the defendant in New York for transportation to Liverpool. The entry made on the defendant's books of the receipt of the merchandise indicates, very clearly, that it was received in the fulfillment of the defendant's contract with the plaintiff. The bills of lading also correspond with this version of the transaction. The alteration made in the duplicate handed to the defendant, cannot affect the rights of the parties, and I can discover no legal significance in the act, except to prove notice to the defendant that the shippers had agreed to pay for freight at a greater rate than that fixed by the contract with the plaintiff. It is needless to review all the evidence upon the subject. It is sufficient to say that upon an examination of it we have come to the conclusions expressed.

It is said that the agent of the defendant, by whom the contract with the plaintiff was made, was not authorized to enter into contracts except with actual shippers, and verbal evidence was given to that effect. But "actions speak louder than words." We are of opinion that the general course of business of the defendant, especially its acts and conduct in respect to this particular transaction,

and more especially the fact that the authority to make the particular contract in this case was communicated to the agent by means of a telegraphic dispatch, which contained no restriction or limitation whatever, are ample to prove both an original authority to make the contract, and a complete adoption by the defendant of the acts of the agent done under that authority.

The merchandise was sent from Chicago under what is called joint bills of lading, that is to say bills of lading executed by the Erie and Pacific Dispatch Company, under a general authority from the defendant. Those bills provided, in the usual terms, for the delivery of the merchandise to the consignees named therein in Liverpool, on payment of the freight stated therein, being that agreed upon between the shippers and the plaintiff, which, as before stated, was greater than would result from the addition of the freight specified in the contract between the defendant and the plaintiff to that which was payable for the carriage of the merchandise from Chicago to New York, freights from New York to Liverpool having advanced in price in the interval between the making of said contract and the shipment of the merchandise. In other words, the freight payable according to the bills of lading embraced a rate for ocean freight in excess of the rate specified in the contract between the defendant and the plaintiff. The merchandise thus sent came forward charged with a lien for all the freight. The defendant advanced to the Erie and Pacific Dispatch Company the amount of freight due that company, and upon the delivery of the merchandise in Liverpool, collected the whole freight specified in the bills of lading. The referee decided that the plaintiff was entitled to recover the excess so received by the defendant over the amount advanced to the Erie and Pacific Dispatch Company, and the freight stipulated for by its contract with the plaintiff, with interest on such excess. We are of opinion that that decision is correct, for the reason that such excess belongs, in justice and equity, to the plaintiff, and is recoverable as money had and received to his use.

The owners of the merchandise shipped have no claim against the defendant for such excess, for they have paid no more than they agreed to pay. As before stated, they merely purchased from the plaintiff his right to have the merchandise carried. If the plaintiff had acted as their agent in procuring such carriage, they might

claim that he was incapacitated from receiving the benefit of his contract with the defendant, and that such excess, in equity, belonged to them. And if such had been the case the owners would have had the right of action which the plaintiff here claims. The defendant, however, as long as the contract with the plaintiff remains in force, is divested of all right to retain such excess. The plaintiff did not act as agent of the owners. The merchandise was carried by the defendant under the liability to the owners created by the bills of lading, but the liability to return the excess of freight received, is one which the law implies in favor of the plaintiff and not of the owners. That the law does imply such a liability to somebody, is clear upon principle and authority. (*Moses* v. *Macferlan*, 2 Burr., 1005; *Eddy* v. *Smith*, 13 Wend., 490; *Colvin* v. *Holbrook*, 2 Coms., 130.) That the implication is in favor of the plaintiff is also clear. The defendant, it is true, did not, by its contract with the plaintiff, agree to collect freight due him, but having carried the merchandise and collected the freight upon bills of lading which required the consignees to pay a greater sum for freight than the contract with the plaintiff entitled it to demand, it did, impliedly, undertake to collect the excess for the person entitled thereto. Hence there is no lack of privity between the parties.

We think none of the exceptions of the defendant were well taken. It may as well be mentioned that many of the exceptions of the plaintiff have been argued as if the ruling had been adverse to, and the exception had been taken by, the defendant.

With respect to the point raised at the trial, that this court had been ousted of jurisdiction by the proceedings to remove this action into a Federal court, we are of opinion that the petition of the defendant was fatally defective, because it did not show that the defendant was an alien or citizen or subject of a foreign State or country at the time of the commencement of the action, but only when the petition was prepared. The defendant has also submitted to the jurisdiction of the court, and litigated the action upon the merits, before a referee appointed with its own consent. After these acts it was too late to take the objection of the want of jurisdiction.

The judgment must be affirmed with costs.

Present — BARNARD, P. J., GILBERT and DYKMAN, JJ.

Judgment affirmed, with costs.